# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPad tablet<br>FP&F # 2022250400166002 0004 | Case No.   '22 MJ02937 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 371, 545 | Conspiracy, Smuggling |
| 7 USC 136j(a)(1)(A) and 136l(b)(1)(B). | Illegal Sale and Distribution of Pesticides |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations (HSI) Special Agent Michael Lesley, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Michael Lesley, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: ~~08/15/2022~~ 8/16/22                             *William V. Gallo*
                                                         *Judge's signature*

City and state: San Diego, California     Hon. William V. Gallo, U.S. Magistrate Judge
                                           *Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Michael Lesley, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search aa Apple iPad tablet found in the possession of David SLOBODENKO on August 11, 2022, as he entered the United States from Mexico, as further described in Attachment A, and seize evidence of violations of federal law, namely Conspiracy, in violation of 18 U.S.C. §371; Smuggling, in violation of 18 U.S.C. § 545; and the Illegal Importation of Pesticides, in violation of 7 U.S.C. § 136j(a)(1)(A), as further described in Attachment B. The **Target Device** is identified an Apple iPad tablet, assigned seizure number FP&F 2022250400166002 0004.

2. The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored in Department of Homeland Security ("DHS") custody. Special Agents seized the **Target Device** on August 11, 2022, from David SLOBODENKO after 600 bottles of the Mexican pesticide "Taktic" were discovered in a trailer pulled by the vehicle he was driving as he was attempting to enter the United States at the San Ysidro Port of Entry ("POE").

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug and pesticide investigations, and my personal

observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5. I am a Special Agent for Homeland Security Investigations ("HSI") and have been so employed since April 2016. Prior to my employment with HSI, I was employed as a Border Patrol Agent with the United States Border Patrol from October 2009 to April 2016.

6. During my experience in law enforcement, I have had training in investigating narcotics smuggling and commercial fraud including the unlawful importation, possession, and distribution of illegal environmentally hazardous materials and chemicals. My experience includes many arrests, searches, and interviews. I have also worked and consulted with many law enforcement officers experienced in smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of smugglers, including those who attempt to import illegal pesticides into the United States from Mexico at the San Diego International Ports of Entry.

7. In my current position with HSI, my duties include investigating narcotics smuggling and commercial fraud including environmental, economic, and wildlife crimes, false statements, and deceptive business practices. I have worked as the case agent, directing specific importation-related investigations, including drugs, wildlife, and commercial fraud. I have conducted surveillance, observing and recording movements of individuals trafficking in fraudulent and counterfeit goods or of those suspected of trafficking in fraudulent and counterfeit goods. I have obtained and executed search warrants. I have initiated and executed arrests for illegal-importation offenses, including possession with the intent to distribute and the importation of narcotics and smuggled substances. I have also interviewed defendants and witnesses relating to the illegal trafficking of controlled substances and pesticide smuggling.

//
//

2

*Affidavit in Support of Search Warrant*

# BACKGROUND

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for unregistered, Mexican-manufactured pesticides to be smuggled into the United States and used by Drug Trafficking Organizations ("DTOs") on illegal marijuana grows located on public lands. These pesticides have a detrimental effect on the environment and pose a health and safety risk to law enforcement officers responsible for investigating and eradicating these illegal grow sites. DTOs choose public lands for illegal marijuana cultivation due to their remoteness and, in the process, DTOs indiscriminately damage and destroy natural resources by poisoning wildlife, diverting streams, cutting down trees, manipulating the land for irrigation, leaving behind refuse, and applying unregistered fertilizers and pesticides in an unsafe manner. These illegal pesticides are primarily used on illegal marijuana cultivation areas, but not on legally permitted marijuana cultivation areas because marijuana products sold legally in California must be tested for the absence of any pesticides before sale.

9. Based on my training and experience, and conversations with other law enforcement officers, I know that pesticide smugglers work in concert with other individuals and do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving pesticide smuggling generate many types of electronic evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

10. Based upon my training and experience as an HSI Special Agent, and my consultations with law enforcement officers experienced in pesticide smuggling investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

    a. Pesticide smugglers, like drug smugglers, use cellular telephones

3

*Affidavit in Support of Search Warrant*

because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

      b.    Pesticide smugglers, like drug smugglers, use cellular telephones because they can actively monitor the progress of the illegal cargo while the conveyance is in transit;

      c.    Pesticide smugglers and their accomplices, like drug smugglers, use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and to monitor and plan for arrivals; and

      d.    Pesticide smugglers, like drug smugglers, use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo.

11. Subscriber Identity Module ("SIM") cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM card that has been utilized in connection with that telephone. Some iPads are capable of carrying a cellular telephone connection, and use SIM cards to facilitate that connection.

12. Based on my experience and training, and conversation with other law enforcement officers, I know that the use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, images, audio files, call logs, address book entries, IP addresses, social network data, and location data. This evidence can include records of financial transactions, shipping and transportation records, records of searches of internet databases regarding the legal requirements relating to their activities, as well as images of any permits or official authorization for their activities, and images of the smuggled items.

### STATEMENT OF PROBABLE CAUSE

13. According to CBP reporting, at about 6:32 p.m. on August 11, 2022, David

4

*Affidavit in Support of Search Warrant*

Danilovich SLOBODENKO entered the United States at the San Ysidro POE as the driver and registered owner of a black 2018 Dodge Ram, bearing California license plates, and towing a white enclosed cargo trailer. Timofey Vladimirovich BARNYAK and three females were passengers in the vehicle. The CBP Officer asked the group where they were going to, and BARNYAK responded that they were returning from hosting a youth camp in Mexico. The CBP Officer noticed the group had several back packs and several plastic bags containing what felt like beans inside. The CBP Officer asked the group what was inside the trailer, and SLOBODENKO responded that it contained only dirty clothing. After observing several pieces of luggage and the plastic bags containing what felt like beans, the CBP Officer referred the vehicle to Secondary for further inspection.

14. In the secondary lot, a CBP Officer asked the group where they were coming from, and they responded that they were in Mexico for a church group trip and were hauling back all of the gear for the group, while the other group members travelled back in separate vehicles. After determining that the plastic bags contained coffee beans, the CBP officers looked in the trailer and saw that it contained a variety of bags and suitcases. The CBP Officers advised the group that they would need to unload the trailer so that the officers could inspect the trailer and its contents. During the unloading of the bags and suitcases by the group, cardboard boxes became visible. The cardboard boxes had been stacked in the center of the trailer such that they were concealed by the bags and suitcases. A CBP Officer asked SLOBODENKO what the boxes contained, and SLOBODENKO claimed he did not know, but stated that he was asked by a family member to pick up the boxes in Mexico and deliver them to the family member in the United States. CBO Officers determined that the boxes contained bottles of the Mexican pesticide "Taktic." In all, the CBP Officers seized 100 boxes, each containing 6 one-liter bottles of "Taktic," for a total of 600 bottles.

15. After being advised of his Constitutional rights and waiving his rights in writing, BARNYAK stated that he is a beekeeper and that Taktic is used by beekeepers to kill mites. He stated that he was asked to purchase Taktic by people in California and Oregon before he travelled to Mexico. He said he purchased the pesticides from a friend of

5

*Affidavit in Support of Search Warrant*

his in Mexico, and the pesticides cost him $23,000 (approximately $38.33 per bottle), which he paid in cash. He stated that he expected to make approximately $13,000 in profit from the sale of the pesticides. BARNYAK stated that he has previously purchased pesticides in Mexico and brought them into the United States three or four times, going back to at least May of 2021. BARNYAK stated that he had told SLOBODENKO that there was medicine for bees in the trailer, and that SLOBODENKO was present when the trailer was being loaded with the boxes of Taktic.

16. BARNYAK identified his cellular phone, which was an iPhone later assigned seizure number 202225040016001 0003. BARNYAK consented to a search of his cellular phone. I conducted a preliminary review of BARNYAK's text messages, and identified a text message between BARNYAK and his Taktic supplier in Mexico from January 2022. In that message, BARNYAK tells his supplier in Mexico that "David" would pick up pesticides from him (the supplier) in a couple of weeks. Border crossing records show that David SLOBODENKO crossed north into the United States from Mexico on February 5, 2022.

17. After being advised of his Constitutional rights and waiving his rights in writing, SLOBODENKO stated that he saw the boxes being loaded into the trailer when they were in Mexico. He stated that BARNYAK had told him to allow the boxes to be placed in the trailer, and that the boxes were for bees. SLOBODENKO knew the individual identified by BARNYAK as supplying the pesticides to a pastor's son living in Mexico. SLOBODENKO identified his cellular phone, which was an Apple iPhone, later assigned seizure number FP&F 2022250400166002 0003. SLOBODENKO said he had traveled to Mexico on approximately 20 prior occasions and the records related to those trips would be found in his phone. SLOBODENKO identified his Apple iPad tablet (the **Target Device**), later assigned seizure number FP&F 2022250400166002 0004, which had been in the vehicle with him. SLOBODENKO said that he communicated with BARNYAK via Facebook Messenger. The Facebook Messenger application appears on SLOBODENKO's iPad.

18. According to the label, "Taktic" contains the active ingredient amitraz at an emulsifiable concentration of 12.5%. U.S. Environmental Protection Agency (EPA) special agents advised that in the United States, amitraz in this form is a cancelled and unregistered pesticide. In the United States, an emulsifiable concentrate product by the name Taktic with 12.5% active ingredient amitraz was approved for use as an insecticide and miticide in 1986 and cancelled in 2014. Similarly, the last ready-to-use product of amitraz was cancelled in 2019. Amitraz was primarily used for flies and mites on cotton and pear crops; livestock ticks, lice, and mange mites on beef and dairy cattle and swine; ticks on dogs; and parasitic mites on honeybees. In humans, amitraz poses oral and inhalation risks, as well as a possible cancer and neurotoxicity risks.

19. Federal law prohibits the distribution and sale of canceled or unregistered pesticides. 7 U.S.C. §136j(a)(1)(A). Only pesticides registered with the EPA may be imported or sold in the United States. 7 U.S.C. §136o(c). All pesticides intended for use in the United States must bear their EPA registration number on their labels, preceded by the phrase "EPA Registration No." or "EPA Reg. No." 40 C.F.R. §156.10(e). In addition, all required information on a label must appear in the English language. 40 C.F.R. §156.10(a)(3). The bottles of pesticides found with BARNYAK and SLOBODENKO were labeled only in Spanish and bore no EPA registration numbers.

20. The lawful importation of pesticides into the United States requires a Notice of Arrival to be provided to U.S. Customs, pursuant to 19 CFR 12.112. BARNYAK and SLOBODENKO provided no such Notice of Arrival for the pesticides in this case.

21. Given the facts surrounding the investigation of BARNYAK and SLOBODENKO, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in pesticide smuggling, there is probable cause to believe that information relevant to the offenses of conspiracy, smuggling, and illegal importation of pesticides will be found in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or

7

*Affidavit in Support of Search Warrant*

location data, would be relevant to proving conspiracy, smuggling, and/or the illegal importation of pesticides by:

    a.    tending to indicate efforts to import and transport cancelled or unregistered pesticides;

    b.    tending to indicate contact with individuals regarding the location(s) at which the pesticides might be used and/or the plant(s) or surface(s) to which the pesticides might be applied;

    c.    tending to identify electronic media accounts–such as email addresses, IP addresses, social media accounts and phone numbers used to facilitate the importation of pesticides;

    d.    tending to identify co-conspirators, criminal associates, or others involved in importation of pesticides;

    e.    tending to identify travel to or presence at locations involved in the importation of pesticides;

    f.    tending to identify proceeds associated with the importation of pesticides into the United States;

    g.    tending to identify information regarding the legal requirements applicable to the importation of pesticides into the United States;

    h.    tending to indicate permits and official authorization to import pesticides;

    i.    images of pesticides and/or locations where pesticides are used;

    j.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and

    k.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

22. Finally, I note that pesticide smuggling conspiracies, like drug conspiracies, generally entail detailed and intricate planning as part of efforts to evade detection by law

8

*Affidavit in Support of Search Warrant*

enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant pesticide smuggling-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's vehicle or pedestrian stop at a POE and will continue to attempt to communicate with the subject after the vehicle or pedestrian stop to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that the appropriate date range for the search of the **Target Device** is from January 1, 2022, up to and including August 12, 2022.

## METHODOLOGY

23. It is not possible to determine, merely by knowing a tablet's make, model and serial number, the nature and types of subscription services and the nature of the data stored on the devices. Tablets today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices over the internet and remotely destroy all the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many tablets do not have hard drives or hard drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some tablets using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

9

*Affidavit in Support of Search Warrant*

24. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the tablet and any memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

26. There have been no prior attempts to obtain the evidence sought in this warrant, except as described herein.

## CONCLUSION

27. Based on all the facts and circumstances described above, I believe probable cause exists to conclude that David SLOBODENKO used the **Target Device** to facilitate the offenses of conspiracy, smuggling and illegal importation of pesticides, and to communicate with co-conspirators. The **Target Device** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 18, United States Code, Sections 371and 545; and Title 7, United States Code, Section 136j(A)(1)(A).

28. Because the **Target Device** was promptly seized following SLOBODENKO's search at the San Ysidro POE, there is probable cause to believe that evidence of the offenses committed by SLOBODENKO continue to exist on the **Target Device**. As stated above, I believe that the date range for this search is from January 1, 2022, up to and including August 12, 2022.

//

//

*Affidavit in Support of Search Warrant*

29. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*

Michael Lesley, Special Agent
Homeland Security Investigations

Subscribed and sworn to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1 on August ~~xx~~ 15, 2022.
16 wvg

*William V. Gallo*
THE HON. WILLIAM V. GALLO
United States Magistrate Judge

11

*Affidavit in Support of Search Warrant*

# Attachment A

### *Item to be Searched*

The item to be searched is an Apple iPad tablet assigned seizure number FP&F 2022250400166002 0004 (the "**Target Device**").

The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, San Diego, CA 92101.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the tablet described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the tablet for evidence described below. The seizure and search of the tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, images, audio files, videos, and location data, from January 1, 2022, up to and including August 12, 2022:

a. tending to indicate efforts to import and transport unregistered pesticides;

b. tending to indicate contact with individuals regarding the location(s) at which the pesticides might be used and/or the plant(s) or surface(s) to which the pesticides might be applied;

c. tending to identify electronic media accounts–such as email addresses, IP addresses, social media accounts and phone numbers–used to facilitate the importation of pesticides;

d. tending to identify co-conspirators, criminal associates, or others involved in importation of pesticides;

e. tending to identify travel to or presence at locations involved in the importation of pesticides;

f. tending to identify proceeds associated with the importation of pesticides into the United States;

g. tending to identify information regarding the legal requirements applicable to the importation of pesticides into the United States;

*Affidavit in Support of Search Warrant*

      h.      tending to indicate permits and official authorization to import pesticides;

      i.      Images of pesticides and/or locations where pesticides are used;

      j.      tending to identify the user of, or persons with control over or access to, the Target Telephone; and

      k.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

all of which are evidence of Conspiracy, in violation of 18, U.S.C. §371; Smuggling, in violation of 18 U.S.C. § 545; and Illegal Importation of Pesticides, in violation of 7 U.S.C. § 136j(a)(1)(A) and 136l.